## REMICK MUSIC CORPORATION v. AMERICAN TOBACCO CO. et al.

District Court, S. D. New York.

Sept. 12, 1944.

Spring & Eastman, of New York City (Leopold V. Eastman, Samuel Spring, and Sidney J. Brown, all of New York City, of counsel), for plaintiff.

Chadbourne, Wallace, Parke & Whiteside, of New York City, for defendant American Tobacco Co.

Hartman, Craven & Fuld, of New York City (George W. Whiteside, Alex Craven, and Dwight R. Collin, all of New York City, of counsel), for defendant Foote, Cone & Belding.

KNOX, District Judge.

Four motions, in the above entitled suit, and now before the court, were argued together and similarly, will be decided. The first to be considered will be that of defendant which asks for a dismissal of the complaint.

Plaintiff a subsidiary of Warner Brothers, and one of the country's largest publishers of sheet music, specializes in songs and musical compositions that have mass appeal, and two of its currently popular songs are entitled, respectively, "It Had To Be You," and "Time Waits For No One." Owing to the evanescent nature of what are known as popular song hits, such numbers, if they are to be remunerative, must be exploited widely, and realization upon them must be had before public fickleness consigns them to oblivion. Plaintiff's success in business, it avers, is due to the following factors—

(1) Ability to secure the works of outstanding song writers;

(2) The creation of a demand for their publication on the part of the populace;

(3) Persuasion of radio performers, orchestra leaders, and entertainers generally, to play plaintiff's musical compositions, and the willingness of manufacturers to reproduce them phonographically, and electrically.

American Tobacco Company, one of the nation's largest industrial enterprises, engages in wide advertising campaigns that are designed to maintain and extend its markets for nicotine products. One of the mediums by which this is accomplished is the presentation of a weekly radio program entitled "Your Hit Parade." In furnishing this entertainment, the Tobacco Company has the aid of the firm of Foote, Cone & Belding, an advertising agency. "Your Hit Parade" program has been on the air for about eight years, and having met with public favor, is said to have a weekly audience of fifteen million persons.

Defendants' program consists of the rendition of what are claimed to be the ten most popular songs of the week in which the broadcast takes place, and these songs are sung in the order of their respective appeals to the public. The rating thus given to the particular numbers is determined, according to defendant's assertions, by an extended and scientific weekly survey, which, accurately ascertains the varying musical fancies of the public.

Plaintiff, on the other hand, avers that decisions as to the order in which defendants present songs that are broadcast weekly upon their programs, are arbitrarily and capriciously made, and that this constitutes unfair competition with plaintiff's popular selections. It is further charged that the selection of numbers with which defendants regale the public are chosen with the purpose of enabling their vocal artists to sing songs readily adaptable to their abilities and capacities, and thus give them acceptable renditions.

Specifically, the complaint alleges that currently, plaintiff's songs, "Time Waits For No One" and "It Had To Be You," are among the first five most popular songs throughout the nation, and that by any reasonable standards of measurement, they should have been so recognized by defendants. Instead of according them the rating to which they are rightly entitled, and which were indicated by defendants' sampling, the songs are said to have been sung in an improper order of their popularity, or to have been entirely omitted from defendants' progress.

As a result of defendants' discrimination, plaintiff's trade with the public, musical houses, radio entertainers and phonograph

companies is said to be seriously and adversely affected. In other words, defendants' selections, which are widely listed by defendants, are publicly regarded as such an accurate index of the popularity of current songs that selections appearing thereon, if not properly rated, or if not selected for production at all, are looked upon as being no longer in public favor, and soon will be ignored or forgotten. Hence, plaintiff seeks appropriate relief against defendants for these alleged wrongs.

The complaint contains three causes of action. The first sounds in equity, and the court is asked to restrain defendants from advertising that "Your Hit Parade" program is made up of the first nine or ten most popular songs of the week; that they are performed in the order of their popularity, and that their selection is the result of an extensive and accurate nation-wide analytical survey, and of the popularity of each of them.

The second and third alleged causes of action sound in tort and seek damages for the wrongs charged against defendants. Neither of them, however, contains an allegation of special damage.

In passing, it should be remarked that defendants' right to present the compositions owned by plaintiff is derived from a blanket license to reproduce portions of plaintiff's portfolio, heretofore granted by the American Society of Composers, Authors and Publishers, of which organization plaintiff is a member.

Defendants' motion to dismiss the complaint is based upon the following grounds—

(1) That equity will not enjoin the publication of a trade slander; and

(2) That technically, the complaint is without adequate averments to support the relief sought.

That the theories on which plaintiff comes into court are unusual and have about the elements of novelty, cannot be gainsaid; but these characteristics, in and of themselves, are far from meaning that wrong, however indirect and devious in its impact upon the business of an honest trader, cannot be rectified.

While, so far as products are concerned, there is a wide difference between the lines of merchandise that plaintiff and defendants afford the public, and no direct competition between them, the activities of American Tobacco Company can and allegedly do affect the trade of plaintiffs.

Were it not for the fact that defendants represent themselves as competent to rate and assume to rate the relative popularity of current songs, and then give widespread publicity to those ratings, they could, as their fancy dictates, perform such numbers as they were licensed to perform, and do so without let or hindrance on the part of plaintiff. Defendants' radio program, however, is built on defendants' recognition of variations in the popularity of songs, and on this they capitalize. They assume, as it were, the role and function of a disinterested and impartial observer of such popular variations as occur, and pretend accurately to report the results of their observations. As a result, plaintiff's potential customers place reliance upon defendants' ratings. Song writers, for instance, are influenced with respect to the houses they will select for publication of their compositions. Motion picture companies determine if, from the standpoint of popularity, particular songs are worth the effort of reproduction, and if they accept a song for transcription, defendants' rating affects the royalties to be paid therefor. Band leaders in night clubs and restaurants, seeking to please their patrons, arrange their programs in accordance with the ratings supplied by defendants; soloists and other similar entertainers, likewise depend on such ratings in deciding how they may best satisfy their audiences; while recording establishments and juke box proprietors also choose their offerings by the defendants' index.

But, this is not all. Sheet music sales constitute one of plaintiff's largest sources of income. Such music is distributed to dealers upon consignment. If, in rating a song, the defendants act capriciously and unfairly, and give a particular song a low listing, or wholly ignore it, and if dealers are stocked with songs against which defendants discriminate, they return their sheet music to the concern that published it. Lists of defendants' selections are distributed by defendants, or on their behalf, to the retail music stores for display. The songs on these sheets are given prominence, and the public is induced to buy them. If songs are not on such lists, when they rightfully belong there, plaintiff loses many retail sales.

It thus can be seen that what defendants are doing can immediately and directly af-

fect plaintiff's business, and to such an extent that if they act unfairly and with partiality, they can and will impair its standing as a publisher, and deprive it of large revenues, which, in ordinary course, it would rightfully receive. If defendants deliberately and wilfully indulge in such unfairness, and give it widespread publicity, thus injuring a legitimate business house, it matters little, as I see the case, if there be no direct competition between tobacco products and the manufacture and distribution of sheet music. If a man is to be throttled, it is of no consequence to him whether the assassin's medium be a silken cord or a pair of powerfully muscular hands. In either case, the result will be one and the same.

What has just been said is not intended to suggest that defendants cannot, without legal jeopardy, undertake to rate the popularity of current songs. Ratings of one kind or another, whether of candidates for public office, the relative abilities and accomplishments of Army commanders, the attainments of statesmen, and the worth of political doctrines, to say nothing of ball players and race horses, are an order of the day. And, as every one must recognize, such estimates of popularity have an effect that is more or less dependent upon the public's belief in the fairness of the persons who, in particular instances, assume to appraise the worth and popularity of persons whose standings they purport to record. But, in the examples just mentioned, the commercial element is largely, if not wholly, absent. For this reason, the unfair rating that may be given to an individual or to a race horse is not to be compared to the power that defendants, if wrongly used, can exercise over plaintiff's business. And such power, if honestly, fairly and truthfully exercised, is something of which plaintiff cannot complain, however detrimental it may be. It must take its chances with fickleness, ignorance and lack of public taste, no matter how unjust the result. It is, nevertheless, in the light of defendants' advertisements and proclamations, entitled to an unbiased and full report of the results of such investigations of popularity as defendants may make.

In a world where trade and commerce now make use of modern scientific developments, and have become possessed of instrumentalities of almost unlimited influence, the court must insist that fair dealing and ethical conduct be observed within the market place. To accomplish this, the blades of equitable remedies must be kept sharp, keen and flexible.

■ This was exemplified in International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, wherein it was held that "palming off," once a necessary element in unfair competition cases, is so no longer; nor is it now an absolute essential, that parties be competitors in the same endeavor. Paramount Pictures v. Leader Press, 10 Cir., 106 F.2d 229, Associated Press v. K. V. O. S., 9 Cir., 80 F.2d 575. And as was said in the Leader Press case, supra [106 F.2d 231], "one without privilege so to do, has no right to issue and publish an untrue or · deceptive statement of fact which has a disparaging effect upon the quality of another's property, under circumstances which would lead a reasonable person to foresee that it will have such effect. * * * And if the statement is understood as one of disparagement and the understanding is a reasonable construction of the language used, it is immaterial that the person making it did not intend to be understood in that manner."

Defendants here uttered no word of direct disparagement of plaintiff's songs. Nevertheless, if the songs presented on "Your Hit Parade" program, and according to defendants' survey, were properly entitled to a place thereon, defendants were without right to substitute numbers not so entitled, in their place. In the public eye, a disparagement of this character thus brought about is quite as damaging as an express statement of the unpopularity of the two songs in question. If defendants are really guilty of such a course of conduct, it is so unfair and deceptive as to entitle plaintiff to relief.

■ The foregoing opinion was in the course of preparation, and substantially completed, when Mr. Justice Hecht, of the New York Supreme Court, in a similar suit between a subsidiary of the present plaintiff and the defendants here, ruled that the complaint before him failed to state good causes of action. Advance Music Pub. Co. v. American Tobacco Co., — Misc. —, 50 N.Y.S.2d 287. The pleading with which he dealt, and that here present substantially the same questions of law—although the one before me is more definitive with respect to the type of injury being inflicted on plaintiff. It also contains more specific allegations concerning the dissemination by defendants of their rating lists of pop-

ular songs. In deference to the opinion of Mr. Justice Hecht, and in accordance with the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, I feel that I should dismiss the plaintiff's complaint. Furthermore, law questions presented are both novel and important, and the theory involved, if too broadly applied, could conceivably impinge on the right of free speech. Without an authoritative ruling upon its validity, money, time and effort might be wasted if the case were now permitted to proceed to trial.

In conformity with this decision, plaintiff's motions to examine the presidents of the defendants and for a preliminary injunction must be denied. Defendants' motion for a stay pending the outcome of the case in the Supreme Court of New York is now moot.

Settle Order on notice.