CHILTON v. OKLAHOMA TIRE & SUPPLY CO.

No. 26797.    March 16, 1937.

Rehearing Denied April 20, 1937.

Hickman & Ungerman, for plaintiff in error.

Silverman & Rosenstein and H. A. Pines, for defendant in error.

CORN, J.    Plaintiff filed an action to recover from the defendant $1,719.85, with interest from May 1, 1934, for moneys which had been paid in advance by plaintiff to defendant for services which defendant failed and refused to perform under an oral contract with the plaintiff.    Plaintiff was engaged in the sale of electric refrigerators of the type known and designated as "Frigidaires.'

As a part of the contract of sale plaintiff gave to the individual customers a twelve months' guarantee, and agreed during that period to furnish free service. Plaintiff acted as sales agent by virtue of an arrangement with the state distributor, W. C. Dance, Inc.    Defendant, at the time the moneys in controversy were paid to him, was service agent for Frigidaires, likewise under an arrangement with the state distributor.    The moneys paid by plaintiff to defendant were paid in consideration of the agreement of defendant to furnish the twelve months' free service to plaintiff's individual customers.    In May, 1934, the defendant failed to furnish any further service to plaintiff's customers and plaintiff's suit was brought to recover the unearned portion of the moneys paid to the defendant as his compensation for furnishing such service.

To plaintiff's petition the defendant filed an answer and cross-petition.    In his answer defendant admitted that plaintiff was engaged in the business of selling Frigidaires, and that as a part of the contract of sale the plaintiff's individual customers were to have free service for a period of twelve months following the sale.    Defendant denied that he entered into any oral agreement with plaintiff on or about June 1, 1933, as alleged in plaintiff's petition, or at any other time, whereby he agreed to furnish this service upon refrigerators sold by plaintiff, but alleged that he was, during the time in controversy, the established and authorized exclusive service agent for Frigidaires within plaintiff's trade territory, by virtue of his appointment and selection as such by the duly authorized distributor within the state of Oklahoma; and that defendant un-

dertook and agreed with the state distributor to service all Frigidaires sold within plaintiff's trade territory for a period of twelve months after each sale, free of charge to the customers; and alleged that each Frigidaire sales agent, when he sold a Frigidaire, remitted a certain sum to the defendant which "obligated and bound the defendant to perform said service for a period of one year, as, if and when called upon to do so by the customer-owner."

Defendant admitted the payments to him by the plaintiff of the amount set forth in its petition, but denied that they were made under any agreement between plaintiff and defendant, alleging they were paid under the arrangement above stated.

Defendant also admitted "that he has not serviced the Frigidaires as set forth in plaintiff's petition," but alleged the acts of the plaintiff had prevented performance by him.

The acts of the plaintiff which the defendant alleged prevented performance by him were that the plaintiff, in the month of April, 1934, in order to enrich itself at the expense of the defendant of the services he had agreed to render, and with intent to have the defendant removed as authorized Frigidaire service agent, made false, unwarranted, and malicious statements to the state distributor, to the effect that defendant was not properly performing his duties; that he was neglecting to take care of his calls by owners for service, neglecting to satisfy owners of Frigidaires in attempting to correct defects or improper performance; and that customers were constantly calling the offices of the plaintiff and complaining against the defendant; that plaintiff was the largest seller of Frigidaires within the state of Oklahoma, and that unless defendant was removed as service agent, and plaintiff appointed in his place, the plaintiff would discontinue handling Frigidaires; that as a result of these acts on the plaintiff's part the state distributor breached and rescinded his contract with the defendant, and removed defendant as service agent of Frigidaires within plaintiff's trade territory, and appointed the plaintiff as such service agent in the place and stead of defendant. That the plaintiff further, with the intent and for the accomplishment of the objects and purposes aforesaid, "on June 1, 1934, maliciously importuned and solicited four employees of the defendant to break their contracts of employment with defendant and enter the employ of plaintiff, holding out as an inducement therefor the fact that defendant had been removed as authorized service agent, and promising such employees large rewards by way of salaries and wages, greatly in excess of which defendant was paying or could pay them." That plaintiff further induced and influenced the state distributor to bring an action in the district court of Tulsa county to enjoin the defendant from listing his name in the Tulsa telephone directory as authorized service agent for Frigidaires, and as a result of said action the defendant was so enjoined.

The cross-petition of the defendant alleges, in substance, the same matters set forth in the affirmative part of his answer, and sets up that as a result of these alleged wrongful acts on the part of the plaintiff, the business of the defendant had been injured, and he had been damaged by loss of anticipated profits in a sum in excess of $2,500, but for the purpose of jurisdiction defendant remitted all damages down to the sum of $2,500.

The plaintiff filed a reply and answer to defendant's answer and cross-petition in which it denied all of the affirmative allegations in the answer inconsistent with plaintiff's petition, and all of the material allegations of the cross-petition.

The trial court in sustaining plaintiff's motion for instructed verdict stated:

"Gentlemen of the jury, this case has gone off on a question of law. The court holds that the court has no jurisdiction to hear the matters on the cross-petition because this court has no jurisdiction in libel or slander cases; and on the question of facts on the plaintiff's petition, there is not sufficient evidence to establish a defense to the plaintiff's petition. The court, therefore, instructs you gentlemen of the jury to return a verdict for the plaintiff."

The theory of plaintiff's case, as disclosed by its petition, is based upon an alleged contract between plaintiff and defendant. The plaintiff alleged that the money was paid defendant, under a contract between them, for which defendant agreed to perform certain service, and that in violation of the contract, he refused to perform. The defendant defended on the ground that plaintiff, by its deliberate acts, prevented performance. The evidence of the defendant, if true, amply proves this defense.

The rule of law applicable to the situation thus presented is well stated in Empson Packing Co. v. Clawson (Colo.) 95 P. 546, as follows:

"He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned; or, if the performance of an obligation is

prevented by one of the parties to a contract, the party thus prevented from discharging his part of such obligation is to be treated as though he had performed it."

And in Eaton v. Eaton (Mass.) 124 N. E. 37, 5 A. L. R. 1426, we find:

"It is a necessary implication of every valid contract with covenants binding each party that neither will interfere to prevent performance by the other."

The rule as stated in 6 R. C. L. 1012, is as follows:

"Nonperformance of a contract in accordance with its terms is excused if performance is prevented by the conduct of the adverse party."

In Ray Thomas, Inc., v. Cowan (Cal. App.) 277 P. 1086, the rule is quoted from 13 C. J. 647:

" 'A party to a contract cannot take advantage of his own act or omission, to escape liability thereon. * * * Under this rule performance of a contract is excused when it is prevented by the acts of the opposite party, or is rendered impossible by him'."

In National Supply Co. v. United Kansas Portland Cement Co. (Kan.) 138 P. 599, we find this language employed to state the rule:

"A party to a contract who prevents the performance of any condition can neither claim benefit nor escape liability from the failure of such condition."

Scott v. Hubbard (Ore.) 136 P. 653, laid down the rule thus:

"Where a party to a contract which is in force causes or prevents another party thereto from strictly performing the terms of the agreement, the former will not be permitted to avail himself of the default which he has thereby occasioned."

The court sustained plaintiff's demurrer to defendant's evidence on the cross-petition, giving as reason therefor an alleged want of jurisdiction. While it does not appear in the words used by the court what reason constrained him to such action, the fact is that the court thought he was without jurisdiction because the cross-petition sought damages for libel and slander. The act of the Legislature creating the court of common pleas of Tulsa county expressly excludes it of jurisdiction in actions for libel and slander. Stat. 1931, secs. 3933-3950. The inquiry, therefore, arises whether defendant's cause of action alleged in his cross-petition is one for libel and slander.

In substance, it is therein alleged, after describing the positions occupied by plaintiff and defendant, that plaintiff intended to injure the defendant by causing the state distributor to remove him and install it as service agent, and by inducing defendant's employees to quit their employment and enter plaintiff's, making promises to the employees to induce their action which promises plaintiff never intended to fulfil; that plaintiff induced the state distributor to discharge defendant as service agent and made certain false complaints against defendant's servicing of Frigidaires, and threatened to quit the sales agency if it were not appointed service agent in place of defendant.

The cross-petition clearly alleges a common-law action for a tort, consisting of maliciously interfering with the contractual relations between defendant and the state distributor, and maliciously enticing defendant's employees to quit him and to enter plaintiff's employ. It is well established in American jurisprudence that it is an actionable wrong to procure the breach of an existing contract of employment, although the means used to do so do not exceed mere persuasion, provided this is done maliciously, especially where the contract was one for personal services, such as defendant was required to render for the state distributor. Stebbins v. Edwards, 101 Okla. 188, 224 P. 714; Iron Moulders' Union v. Allis-Chalmers Co., 166 Fed. 45; McGurk v. Cronewett, 199 Mass. 457, 85 N. E. 576; London Guarantee Co. v. Horn, 206 Ill. 493, 69 N. E. 526.

It is equally well settled that the cause of action exists where unlawful means, such as fraud, intimidation, or defamation, have been used. If defamation is the means employed, the action is not one for libel or slander, but for the common-law wrong of malicious interference with contractual rights. The means used do not change the nature of the cause of action. Hollembeck v. Ristine (Iowa) 86 N. W. 377; Angle v. Chicago, etc., R. Co., 151 U. S. 1, 38 L. Ed. 55; Curran v. Galen (N. Y.) 46 N. E. 297.

In Brady v. Interstate Mortgage Trust Co., 96 Okla. 293, 223 P. 145, the second paragraph of the syllabus held:

"In determining whether as a matter of law a demurrer to the evidence submitted in proof of defendant's affirmative defense should be sustained, the demurrant is considered as admitting all the evidence produced on behalf of the defendant, and the inferences and conclusions reasonably to be drawn therefrom."

For the reasons given, we think that the trial court committed reversible error in sustaining the demurrer to the testimony offered on behalf of the defendant and in not submitting the issues raised by the plead-

ings and supported by defendant's proof to the jury. The cause is reversed and remanded, with directions to vacate the judgment and grant the defendant a new trial.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY and GIBSON, JJ., concur.