**PARAMOUNT PICTURES, Inc., et al. v.
LEADER PRESS, Inc.
No. 1887.**

Circuit Court of Appeals, Tenth Circuit.
Aug. 28, 1939.

Frank Wells, of Oklahoma City, Okl.
(D. I. Johnston and Keaton, Wells & Johnston, all of Oklahoma City, Okl., and Louis Phillips, of New York City, on the brief), for appellants.

Frank C. Love, of Oklahoma City, Okl. (Embry, Johnson, Crowe & Tolbert, Chas. Edward Johnson, and V. P. Crowe, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is an action in equity brought by Paramount Pictures, Inc., and Paramount Pictures Distributing Company, Inc., against The Leader Press, Inc. Paramount Pictures, Inc., owns Paramount Pictures Distributing Company, Inc., as a subsidiary. Their separate corporate entity will be disregarded; they will be referred to in the singular; and reference will be made to the parties as they appeared in the trial court.

It is alleged in the bill that plaintiff is engaged in the production and distribution of motion pictures for exhibition in motion picture theaters in Oklahoma and elsewhere; that such pictures have been and are advertised, identified by the public, and known as "Paramount Pictures"; that during the previous fifteen years or more plaintiff has produced each year not less than fifty feature pictures and that it would produce at least an equal number during the current year; that they cost not less than two hundred thousand dollars each, some cost far in excess of that amount,

and some cost a million or more; and that they have attained a very high standard of distinctive quality and merit, and enjoy an extremely valuable reputation in the mind of the general public. It is further alleged that plaintiff employs and has contracts with well-known and outstanding personalities of the stage, screen, and radio, sometimes referred to as "stars" and "featured players" to appear in its pictures; that, in addition to the employment of such personalities, it is necessary for plaintiff to develop and train new actors and actresses in order that new personalities may be created which will receive public approbation and acclaim, and will attain the status of stars and featured players; that through intensive direction, instruction, and exploitation, and the expenditure of large sums of money for outstanding plays and stories, the actors and actresses employed by plaintiff have attained outstanding prominence in the public mind, and the motion pictures in which they appear attract large audiences and are in great public demand; that proper and adequate publicity and advertising is indispensable to the stars and featured players appearing in motion pictures as well as to the pictures themselves as that constitutes the only means through which information is communicated to the public; that such publicity and advertising must be artistic, meritorious and attractive in form in order that it will appeal to the public and induce persons to attend motion pictures; that plaintiff employs a special staff of artists to prepare special drawings, pictures, photographs, lithographs, posters, display signs, press sheets, and other advertising material and accessories at an annual cost of five hundred thousand dollars for the purpose of announcing to the public in the most favorable and attractive manner its motion pictures and the stars and featured players appearing in them; that such advertising accessories are of highly artistic merit; that plaintiff also expends annually in excess of one million dollars in advertising and publicizing nationally in newspapers, magazines, and other periodicals, and over the radio its motion pictures as well as the stars and featured players appearing in them; and that such attractive and adequate advertising as the medium of attracting the public to its motion pictures is of great value to plaintiff.

It is then alleged that the motion pictures are copyrighted; that they are dis-

tributed for exhibition at theatres, with provision that upon the completion of the exhibition the print shall be returned to plaintiff; that title to the pictures remains in plaintiff; that the licensee has no right in them except to exhibit them in accordance with the license agreement; that the revenue which plaintiff derives, whether it be a fixed fee or a sum equal to a specified percentage of the gross receipts, is diminished by improper advertising, exploitation, and publicity of the pictures and of the stars and featured players who appear in them; that in order to preserve the value of such motion pictures, to preserve and enhance the value of the stars and featured players, to preserve the value of the contracts which plaintiff has with its stars and featured players, to preserve the value of its trade name "Paramount Pictures", and to preserve its good will with the public, plaintiff provides in all of its license agreements with exhibitors, that the exhibitors shall advertise and announce the pictures as "Paramount Pictures", and shall otherwise adhere to the form of announcement contained in the advertising material used by plaintiff in respect to each of its pictures; and that plaintiff leases to each exhibitor to whom it licenses a picture such of its artistic, attractive, and meritorious advertising accessories as he may from time to time require.

It is further charged that well knowing the premises, without the consent of plaintiff, and without the consent of the actors and actresses employed by it, defendant produces, manufactures, sells, and distributes to exhibitors with whom plaintiff has existing contracts, advertising accessories purporting to relate to the pictures of plaintiff; that such advertising accessories do not contain the name of plaintiff or identify its pictures as "Paramount Pictures"; that such accessories contain erroneous, misleading, and deceptive information; that they incorporate therein pictures, cartoons, and caricatures of the stars and featured players employed by plaintiff in an inartistic, grotesque, and inferior manner; that the public attributes such advertising accessories to plaintiff; and that they bring discredit upon the pictures, damage and impair the good will of plaintiff, and injure and jeopardize its business integrity beyond measure. By amendment in the nature of a bill of particulars, the bill describes certain posters charged to have been distributed by defendant referring to

pictures produced and distributed by plaintiff. One related to the picture "Cleopatra". It is alleged that this poster, showing the head of Claudette Colbert, was so prepared that it depicted her as a negress instead of a white woman; that the negroid appearance would lead many persons to believe that the leading character was colored; that the artistic makeup of the poster was extremely crude; that it omitted the name of Joseph Schildkraut, which plaintiff was required by contractual obligation to insert in all advertisements; and that it likewise omitted the phrase "A Paramount Picture". Another poster related to the picture "The Big Broadcast of 1937". It is alleged that it included the names of two stars or featured players who did not appear in the picture; that it mispelled the name of another; that the first names of two were omitted; that the last names of these two were smaller than the names of two others, whereas plaintiff was required to use the same size of type for each of such performers; that it omitted the phrases "Adolph Zukor Presents" and "A Paramount Picture"; and that it was inferior and of obvious inadequate artistry. Similar allegations are made in respect to more than twenty-five other pictures. The prayer is that defendant be enjoined from manufacturing, producing, selling, and distributing advertising accessories intended for use in advertising the motion pictures of plaintiff, and for an accounting.

The motion of defendant to dismiss the bill for failure to allege facts sufficient to constitute a cause of action entitling plaintiff to any relief was sustained, and the bill was dismissed. Plaintiff appealed.

■ In approaching the questions presented it must be remembered that the motion to dismiss admits all matters well pleaded in the bill, and that the ultimate question is whether the facts well pleaded are sufficient to entitle plaintiff to relief in equity. The business in which plaintiff is engaged is a lawful one, and it serves the distinctive wants of a large part of the people in all parts of the country. Elucidation is not needed to make it plain that the right to carry on a lawful business is a valuable right which a court of equity will protect against unwarranted interference or undue obstruction. The business of plaintiff is one of large capital investment, and is maintained and operated at an an-nual outlay of more than a million and one-half dollars for advertising alone. A large part of such business consists of intangible property, that is the popularity of its pictures, its good will, and the good will of its stars and featured players, all of which is brought about in large measure by artistic and attractive advertising calculated to present the pictures and the stars and featured players appearing in them in a manner which appeals to the public and induces persons to attend shows where such pictures are exhibited. But a court of equity will extend appropriate protection to intangible as well as tangible property which forms a part of a lawful business. Equity does not draw any distinction between the two kinds of property in respect of protection against wrongful invasion.

■ It is contended that the bill states a cause of action for unfair competition. It would be profitless to follow counsel through their diligent canvass of International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, and other like cases, for the reason that the bill neither alleges facts which constitute the misappropriation of the property of plaintiff nor the passing off of the advertising merchandise of defendant as that of plaintiff. But it does charge in extenso that the defendant is manufacturing, selling, and distributing for the intended purpose and design of advertising the motion pictures of plaintiff, cheap, inferior, and grotesque advertising accessories which contain erroneous, misleading, and deceptive information, which fail to contain the name of plaintiff or to identify the pictures as "Paramount Pictures", and which bring discredit to such pictures, impair the good will of plaintiff, and injure its business. One without privilege so to do, has no right to issue and publish an untrue or deceptive statement of fact which has a disparaging effect upon the quality of another's property, under circumstances which would lead a reasonable person to foresee that it will have such effect. The making of such a statement in such circumstances is tortious. Cf. Restatement of the Law of Torts, § 626. And if the statement is understood as one of disparagement and the understanding is a reasonable construction of the language used, it is immaterial that the person making it did not intend it to be understood in that manner. Restatement, supra, §

629. The allegations contained in the bill, and admitted by the answer, bring the case well within the ambit of that principle.

According to the bill it is specifically provided in all license agreements which plaintiff enters into with exhibitors that such exhibitors shall announce and advertise each motion picture as "A Paramount Picture", and that in addition to containing erroneous, misleading, and deceptive information the advertising accessories which defendant manufactures and distributes among such exhibitors fail to contain the name of plaintiff or to identify its pictures as Paramount Pictures. The rule that one may not knowingly and intentionally induce another to breach his contract with a third person is too well established to merit extended discussion or the citation of cases. The act of defendant in manufacturing and distributing among exhibitors thus bound by contract, advertising accessories which fail to contain the name of plaintiff or to identify the pictures and Paramount Pictures is a wrongful contribution or inducement to the breach of the license contracts. It is said that defendant does not use the advertising accessories; that instead the operators of the motion picture theatres use them. But defendant manufactures and distributes them among such exhibitors for the intended purpose of being used in a manner which violates the license contracts existing between plaintiff and such exhibitors. That is a direct inducement to the breach and is therefore enough. It is also said that if plaintiff can be heard as to the manner in which an exhibitor advertises his pictures, it may also be heard as to the manner in which he advertises his theatre. The manner in which an exhibitor advertises his own theatre is one thing. Of course plaintiff has no right to be heard in respect of it. But the manner in which he advertises the pictures of plaintiff and the stars and featured players appearing in them is quite another. Manifestly plaintiff has the right to be heard in respect of it if the advertising violates the license agreement or wrongfully disparages the business in such manner as to impair its good will and reduce its value.

The decree is reversed and the cause remanded with directions to deny the motion to dismiss, and for further proceedings not inconsistent with the views expressed herein.