**TAXICAB DRIVERS' LOCAL UNION NO.** 889, a Voluntary Association; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a Voluntary Association; Gloyd Davidson, Individually, and as Business Representative of Taxicab Drivers' Local Union No. 889; and Joseph Maroof, Individually, and as President and Member of the Executive Board of Taxicab Drivers' Local Union No. 889, Plaintiffs in Error,

v.

**H. E. PITTMAN, Defendant in Error.**

No. 37021.

Supreme Court of Oklahoma.

Oct. 22, 1957.

Rehearing Denied Feb. 25, 1958.

**162**

Mullinax & Wells, by Houston Clinton, Jr., and L. N. D. Wells, Jr., Dallas, Tex., Schwoerke & Schwoerke, by C. W. Schwoerke, Oklahoma City, for plaintiffs in error.

Johnson, Gordon & Cotter, Everett E. Cotter, Oklahoma City, for defendant in error.

Clark Nichols, Roy L. Sullivan, Edward E. Soule, John H. Cantrell, Oklahoma City, Floyd L. Rheam, Tulsa, V. P. Crowe, Oklahoma City, amici curiae.

PER CURIAM.

This action was initiated by the defendant in error, plaintiff below, to recover damages for the alleged wrongful actions of the various defendants below in instituting and conducting disciplinary action against him within the defendant labor unions and thereafter causing the loss of his job. The initial petition joined several individuals, the plaintiff's employer, and the plaintiffs in error as defendants; but all save the present plaintiffs in error were omitted from the second amended petition upon which the action was tried for the second time after motions for new trial were sustained following the first trial. The case was dismissed as to the defendants omitted from this last petition.

■ When process was served upon the defendant, International Union, and defendant, Local Union, they each appeared specially and moved to quash service, and objected to the court's jurisdiction for the reason that they were voluntary associations upon whom service was not authorized by service of summons upon any individual member of the association. The action of the court in overruling their respective motions is one of the assignments of error each argues in its appeal.

Insofar as the Local Union is concerned, the validity of the objection to the jurisdiction is not open to review for the reason that the question was not presented to the trial court in the defendant's motion for a new trial. Bilby v. Gibson, 133 Okl. 196, 271 P. 1026. Any question as to the suability of this defendant has been waived insofar as this appeal is concerned. Hotel, Restaurant & Soda Fountain Emp. Local, etc. v. Miller, 272 Ky. 466, 114 S.W.2d 501.

■ The sheriff's return of service on the International Union states that the summons was served on:

"* * * the within named defendant, as follows, to-wit: Intnal. Brotherhood of T-C-W & H of America, a corporation, * * * by delivering a true and correct copy * * * to Joe Maroof, he being the Member of said corporation, and the President, Vice-President, Secretary, Treasurer, or other chief officer not being found in my County."

■ Service of process such as is described in this return is obviously defective. It is not possible to serve a "corporation" by serving a "member," and no attempt was made to amend this return. The plaintiff's petition described the International Union as an "Association" within the meaning of Sec. 182, 12 O.S.1951, which, if true, would authorize service of process on a member; but the verified motion to quash, supported by affidavit, stated that the defendant was a voluntary association and that Joseph Maroof was not a person upon whom valid service of summons on the defendant could be accomplished. Uncontroverted allegations of fact in a verified motion to quash supported by affidavit are taken as true. This motion to quash service of process was erroneously overruled. International Brotherhood of Teamsters, etc., v. Santa Fe Packing Co., Okl., 300 P.2d 660. On this matter amici curiæ have suggested that we did not properly interpret the phrase "gain or speculation" as used in Sec. 182, supra, in our opinion in the Santa Fe case. Notwith-

standing the definitions of "gain" they suggest, we are convinced that the reasons stated for our conclusion in that case are valid. If the limitation in this statute seems too narrow, change should be sought from the Legislature.

The petition upon which this action was tried alleged that the plaintiff was wrongfully charged, tried, and convicted for an offense within the Local Union, and that the defendants have wrongfully and maliciously denied him the right to work. He asked for his actual damages of $300 and for punitive damages. The action was consolidated for trial with two other actions involving other drivers similarly charged and convicted in the Local Union for the same offense for which plaintiff was punished.

The evidence discloses that during the spring of 1952 several members of Local Union became dissatisfied with the conduct of their officers in the management of the Union. Plaintiff and others decided that they would consult with the International Union Organizer, Mr. Mandoiza, on the method they might employ to correct what they considered to be the mismanagement of the Local. Pursuant to their purpose they went to Dallas, Texas, where they were advised by Mandoiza that they could prefer charges against the officials or they could circulate a petition containing their complaints and send it to the International with a request for an investigation of the Local. Mandoiza advised against filing charges, but recommended seeking an investigation by the International as the best method to accomplish their purpose. Upon their return to Oklahoma City these members of the Local Union caused a petition to be prepared and circulated in which it was stated:

> "* * * the Business Agent and some other elective officials of our Local by their *nefarious* actions have been and now are *habitually and wilfully negligent of their duty* as outlined in the Constitution and By-Laws of our Union." (Emphasis supplied.)

The plaintiff signed this petition to which was attached 23 specific complaints concerning the various officers of the Local; and it was thereupon sent to the International Union by letter which plaintiff also signed, with a request for an investigation of the Local's officers. Most of the specific complaints concerned the defendant Davidson and included allegations of: Incompetency, neglect of duty, making misleading statements in open meeting, violating his oath of office, failure to perform his duties, blocking an organization drive, fostering a company union, failure to file charges against a member when justified, disloyalty to the Union, and failure to investigate and qualify members for sick benefits. These allegations, if true, would have justified severe punitive action against Davidson by the Union. After receipt of this petition by the International Union in June, Mr. Mandoiza was sent to Oklahoma City to investigate the Local Union. His investigation required several days and culminated in a compulsory meeting at which he took a vote of confidence of the membership in their officers. This vote disclosed an almost even division of opinion. He then stated he would make his report to the International, without revealing what it would contain. The nature of this report was never revealed by the record, but apparently no action was taken by the International Union against the local officers.

In November, 1952, the defendant Davidson filed a charge in the Local Union against the plaintiff accusing him of violating a provision of the Union Constitution prohibiting "abuse of fellow members and officers by written or oral communication." The charge was based on the letter and petition sent to the International which it was alleged contained misrepresentations and language calculated and intended to bring the Union officers into disrepute. This written charge, together with a notice that trial was set for November 24, was served on the plaintiff about November 12, 1952. Prior to this trial date the plaintiff,

with others similarly charged, sought an injunction in District Court to prevent the charge being tried by the Local Union Executive Board, which was composed of the officers of the Local Union other than Davidson. Hearing on the injunction was on November 28th at which time the elected Executive Board agreed to disqualify and permit the appointment of other members to try these charges. Upon this agreement the injunction was denied. Thereafter, on December 4, notice of resetting of the Union trial for December 8th was served on the plaintiff. On the trial date another member, similarly charged in connection with the petition sent to the International, was tried first. Plaintiff was not permitted to participate in that trial. At the conclusion of the evidence in that case the plaintiff was called before the trial board and permitted to make a statement to the board, but he was not allowed to produce witnesses; nor was he permitted to cross-examine the witnesses who had testified in the first trial. The trial board made it plain to him that they did not want to hear any more witnesses concerning the matter. At the conclusion of this short hearing, the Board retired to deliberate. Thereafter, the trial board announced that they found the plaintiff guilty, sentenced him to pay a fine of $200 and suspended him from union activities for one year. Upon his plea for leniency they reconsidered and suspended $100 of the fine during his good behavior. On December 12th the plaintiff appealed to the International Union and asked that his fine be waived pending the appeal. The waiver of this fine was an act solely within the discretion of the General President of the International Union.

During the remainder of December the plaintiff continued to work for the company by whom he was employed as a cab driver without interference from the Union. On the next dues-paying date, January 2, 1953, the plaintiff tendered the Local Union his dues, but refused to pay the fine. The Secretary refused to accept the dues unless the fine was also paid. Plaintiff continued to work until January 8th when he was suspended from work at the request of the Business Agent and President of the Local Union by virtue of the Local Union's "closed shop contract" with his employer, the terms of which provided that all employees must be in "good standing" with the Local Union. As a result of this suspension the plaintiff was without work until February 16th. There is no dispute concerning the amount of his actual damage.

Plaintiff's appeal hearing by the International Union was on January 22nd at which time it was first learned that the fine had been waived by the International President on January 17th. After the appeal group held its hearing, its report was sent to the International Union Executive Board which, on March 9, 1953, entered its decision affirming the Local Union conviction, but modifying the penalty to a fine of $100.

This suit in the District Court was tried to a jury which returned a verdict for the plaintiff awarding him his actual damage of $300 and punitive damages against the Local Union of $3,000, and against the individual defendants of $100. The trial court concluded that the award of exemplary damages against the Union was excessive and ordered a remittitur of $1,500. Upon compliance wtih the order for a remittitur, judgment was rendered against the defendants, and they appeal.

■■ There can be no dispute concerning the authority of an organization such as this Union to establish rules which permit disciplinary measures against members who violate their reasonable provisions. Such associations have authority to regulate the conduct of their members. Dangel & Shriber, Labor Unions, Sec. 171. For this reason it is held that the public courts will not interfere with the internal discipline of voluntary associations except where the conduct for which discipline is attempted is not or cannot reasonably be made a punishable offense, or where the procedure taken to punish the member is

so lacking in fairness as to render the decision void. It is this last exception under which this plaintiff bases his right to recover in this action.

█ Courts look with favor on the settlement of such controversies within the affected organization; therefore, their trials of charges do not have to conform to the same rigid standards as those established in the public courts. If the procedure adopted or required by the rules of the association conforms to the basic notions of justice which all recognize as essential to a fair trial, the result will not be disturbed so long as the conviction has some support in the evidence produced before the association trial board. In other words, if the organization does not act arbitrarily or in bad faith and conforms to its reasonable rules and mode of procedure, giving the accused a reasonable opportunity to defend himself, its internal discipline must be observed by those who voluntarily assent thereto upon becoming members of the association. See Annotation 21 A.L.R.2d 1397.

█ With these general observations in mind, we must now examine the proceedings resulting in the penalty imposed on this plaintiff by the defendant Local Union. It is immediately apparent from an examination of the record in this case that the Local Union Trial Board did not grant this plaintiff a fair trial. In truth, they did not grant him a trial at all. He was not permitted to examine the witnesses upon whose testimony the trial board based its decision. He was not permitted to produce witnesses in his own behalf as was authorized by the Union constitution. The basis of his conviction was testimony produced in another member's trial which he was not even permitted to attend. His admission that he signed the petition and letter was not a plea of guilty. This was not an admission that the "irregularities" in the petition were false, and unless they were false, they were not "abusive." The plaintiff was entitled to a trial conforming to the basic notions of justice which all

recognize as inherent in a fair trial. This was not accorded him. The judgment of the union tribunal is void. Cason v. Glass Bottle Blowers Ass'n, 37 Cal.2d 134, 231 P.2d 6, 7, 21 A.L.R.2d 1387; Washington Local Lodge, etc. v. International Bros., etc., 33 Wash.2d 1, 203 P.2d 1019; Johnson v. International of United Bros., 52 Nev. 400, 288 P. 170.

In the Cason case just cited it was held

"The courts will interfere with the decision of a trade union expelling a member if the rules of the Union governing expulsion have not been observed or if the member has not been afforded those rudimentary rights giving him reasonable opportunity to defend against the charges made.

"The requirements of a 'fair trial' respect to expulsion of a union member includes the right to notice of the charges, to confront and cross-examine the accusers and to examine and refute the evidence."

When the plaintiff refused to pay this void penalty at the next dues-paying date, he was suspended from work by his employer at the request of Maroof and Davidson. These defendants made this request based upon their determination that the plaintiff was no longer a member of the Union in good standing as was required by the Union's contract with his employer. That contract provides:

"All said employees * * * must become and remain members in good standing in accordance with the laws of the Union * * *. Any such person who fails to comply with this section, shall be suspended from the services of the company, without pay, upon written request from the officers of the Union, * * *"

██ This is an action for damages resulting from the defendants' conduct in interfering with the plaintiff's job after he had tendered to the Union his monthly dues. The plaintiff's right to dispose of his labor was limited by his contract with the Union and by its contract with his

employer, but only to the extent that the Union lawfully proceeded under its constitution and its contract. The Union must be justified in causing a member's suspension from work. The right of any person to pursue his chosen vocation without unlawful interference from third persons is a valuable right which the courts protect; Chilton v. Oklahoma Tire & Supply Co., 180 Okl. 39, 67 P.2d 27; thus the gravamen of this cause of action for damages is the defendants' interference with the plaintiff's job. Breenan v. United Hatters of North America, 73 N.J.L. 729, 65 A. 165, 9 L.R.A., N.S., 254, 118 Am.St.Rep. 727, 9 Ann.Cas. 698. As we view it, this is not an action for the enforcement of plaintiff's contractual rights in his Union.

██ ██ Nonetheless, it is urged that the plaintiff had to pursue his remedies within the association as was required by the Union constitution before resorting to the civil courts. This is a requirement of the Union constitution and is also the general rule of law although some courts have discerned an exception where the punitive action taken against a member is void. Annotation 168 A.L.R. 1462, at page 1468; Annotation 62 A.L.R. 315. Even so, in the view we take of the action, the exhaustion-of-remedies rule has no application. The plaintiff appealed to the International Union, and the Local Union's punishment of him was affirmed as modified on appeal. This action was not brought until several months after all union remedies had been exhausted. The point here is not that he must exhaust his union remedies; the point is whether he was in "bad standing" with his Local Union at the time he was suspended from work at the request of the defendants. If we concede that the failure to pay a fine places the member in "bad standing," whatever that term may mean, we do not believe that one can be in bad standing with an organization for failure to pay a penalty that is absolutely void, the association rules to the contrary notwithstanding. A void judgment has no legal effect and does not create any rights. Le Clair v. Calls Him,

106 Okl. 247, 233 P. 1087. Surely the void judgment of an association would have no more validity than that of a similar judgment in a court of law. The refusal of the union secretary to accept the plaintiff's dues was unauthorized and, the penalty imposed on him being void, his failure to pay the fine offers no justification to the Local Union for its action in causing his dismissal from work. Thus the conclusion of the union officers, that the plaintiff was not in "good standing" with the Union, was not correct. The subsequent action of these officers in causing the plaintiff to be suspended from work was a direct, unlawful interference with his employment. The defendants are liable for the damage resulting from this tortious conduct. Breenan v. United Hatters, supra; Blanchard v. Newark Joint Council of United Bros. of Carpenters & Joiners of America, 77 N.J.L. 389, 71 A. 1131; Sweetman v. Barrows, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311; Gordon v. Tomei, 144 Pa.Super. 449, 19 A.2d 588; Sullivan v. Barrows, 303 Mass. 197, 21 N.E.2d 275.

██ ██ As further ground for reversal of the judgment, the Local Union contends that there has been no cause of action stated or proved against it. The burden of the argument is that the Union is a voluntary association, not a legal entity, whose agents were as much the agents of the plaintiff as of any other member; that although a principal may sue his agent for wrongs committed, he cannot sue his co-principals for the wrong of their common agent. Voluntary unincorporated associations generally are not legal entities. It is only where there is legislation conferring a legal status on such a group that it enjoys rights and duties comparable to those of a corporation, except in particular situations where the law will not permit the group to deny its assumed status. But this defendant union was sued by its common name after it had also contracted and acted as an entity with plaintiff's employer as well as with plaintiff.

It is not impossible to sue such an unincorporated association in this jurisdiction,

Sec. 182, 12 O.S.1951, and if it can be sued as an entity it possesses one, if not all, of the attributes of a legal entity. Suability of the defendant must be seasonably presented and a proper record preserved to present the issue in this court. The only pleading questioning the suability of the Local Union as an entity was its motion to quash, and the court's action on this motion is not presented for review for the reason heretofore stated.

Nevertheless, suability is only one aspect of the problem. In dealing with voluntary associations the courts have quite generally noted that the agents of such organizations are really the agents of each member (where the association is not an entity), and that the general rules of agency determine the liability of the association. American Art Works, Inc., v. Republican State Committee, 177 Okl. 420, 60 P.2d 786. For this reason liability of a labor union has been denied where the conduct of the association's agent is alleged to be the cause of the plaintiff-member's damage. It has been said that the plaintiff-member is equally responsible for the wrongful act of the common agent thereby precluding recovery from the other members. Such is the rationale of the decisions cited by the Union. We note, however, that in each of those cases the conduct of the agent was in the performance of his duty on behalf of the association in some project from which the plaintiff could reasonably expect to benefit just as much as any other member, at the inception of the project. Here we have quite a different situation. One of the most recent cases dealing with this general problem is Bonsor v. Musicians' Union (1955 House of Lords), 3 W.L.R. 788, 3 All E.R. 518. The initial question in the Bonsor case was whether or not the Union was a legal entity. Lord MacDermott, although concluding that the Union was not a legal entity, albeit, as here, one which could be sued as such, nevertheless allowed the action for damages by the member. His opinion, with which Lords Keith and Somervell agreed, lucidly

stated his reason, as follows (1955, 3 All E. R. 538):

"For the purposes of this appeal I am prepared to accept that proposition (i. e. the general theory that the agent is the agent of each member of the association) without inquiry as to what, if any, are the limits to be put on it. But one of its essential ingredients is that the act complained of should be done by the agent on behalf of the injured member. Was the Court of Appeal right in holding that the committee which expelled Mr. Kelly was, in so doing, acting as his agent? (here he refers to a former opinion by the Court of Appeal which the lower court in the Bonsor case felt was binding upon it). In the present case, Denning, L. J., answered that question thus (1954) 1 All E.R. 838): 'I cannot understand this line of reasoning. I cannot understand how it can be said that the committee, when they were excluding the plaintiff, Mr. Kelly, were acting as agents on his behalf. They were acting against him, not for him.' My Lords, I think this criticism is well founded, and I agree with it. * * * To say that this is done on behalf of the person expelled seems to me an unwarranted extension of the agency and quite out of keeping with reality."

We agree. Common sense leads inexorably to the conclusion that officers of the Union causing plaintiff to be suspended from work without pay are anything but his agents for that purpose. The contrary conclusion would smack of flagellantism, an unlikely theory upon which to determine legal liabilities. The use of the agency doctrine under these specific circumstances has no support either in reason or public policy. Contrary to defendants' argument, there is ample authority for the allowance of damages against the association. Thomas v. Dunne, 131 Colo. 20, 279 P.2d 427; Sweetman v. Barrows, supra; Cason v. Glass Bottle Blowers Ass'n, supra. The argument that these officers were not agents

of the Union in this matter lacks merit. The Union constitution and by-laws create specific authority in these officers. The president, Mr. Maroof, was to "preserve and enforce the International Constitution and By-Laws of the Local Union" and the Business Agent, Mr. Davidson, was "charged with the responsibility of enforcing all contracts." Their conduct in causing the plaintiff to be suspended from work is directly related to these specific duties in enforcing the Union's contract with plaintiff's employer.

 It is also urged that certain instructions given by the trial court are prejudicially erroneous. It is not necessary for us to consider these assignments of error for the reason that no proper exception was taken to the instructions. The exceptions to the instructions by the defendants do not appear to have been signed by the trial Judge. This is mandatory in order to perfect a record for review. Garrett v. Lacquement, Okl., 306 P.2d 696. There does not appear in the instructions any such fundamental error as would vitiate the verdict or justify reversal of the judgment.

 The Union also contends that the verdict for exemplary damages was unauthorized, is excessive, and was the result of prejudice created by alleged incompetent evidence and the argument of counsel. Such damages are awarded in actions of this nature as punishment to the defendant, imposed for the benefit of society as a restraint upon him and as a warning and example to deter him and others from committing similar offenses in the future. They are highly penal. Yet, when the evidence plainly shows oppression, fraud, malice, or gross negligence in reckless disregard of another's rights, punitive damages are justified. Oden v. Russell, 207 Okl. 570, 251 P.2d 184. They may be awarded against the principal for the acts of his agent. Kurn v. Radencic, 193 Okl. 126, 141 P.2d 580. The right to continue in his job without interference by third persons is a valuable right belonging to the plaintiff. The malicious interference with this right justifies exemplary damages. Chilton v. Oklahoma Tire & Supply Co., supra. We have carefully examined this record to determine if the alleged incompetent evidence or the argument of counsel created such prejudice as would justify us in reversing the judgment. Bearing in mind the absolute lack of justification for the wrongful interference with this plaintiff's job, the closed shop contract of the union with all other cab companies, as well as the action of the trial court in ordering a remittitur of one-half of the amount awarded by the jury, we are not convinced that there is sufficient justification shown for us to disturb this judgment or that the exemplary damages are excessive.

 Finally, it urged that there was insufficient evidence to sustain the judgment against the defendants, Maroof and Davidson. The uncontradicted evidence was that these two men went to the plaintiff's employer and threatened to call a strike unless the employer suspended the plaintiff. There was also other evidence in the record from which the jury could conclude that actual malice prompted the conduct of these defendants. The judgment finds ample support in the evidence.

The judgment is reversed as to the International Union; in all other respects it is affirmed.

At the request of the plaintiff, judgment is here rendered in favor of the plaintiff and against the Fidelity and Deposit Company of Maryland, as surety of the defendants, Local Union, Maroof and Davidson, on the supersedeas bond on file herein; such judgment on said bond to be entered and enforced by the trial court as if there rendered

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ. concur.

BLACKBIRD, J., concurs in part and dissents in part.

The Court acknowledges the aid of the Supreme Court Commission in the prepara-

tion of this opinion. After a tentative opinion was there written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.