Clady ROYER, Blanton W. Hoover and James T. Hoover, dba Track Service Company, Plaintiffs,

v.

STOODY COMPANY, a corporation, Defendant.

Civ. No. 8642.

United States District Court W. D. Oklahoma.

April 12, 1961.

Franklin & Harmon, Oklahoma City, Okl., for plaintiffs.

Rainey, Flynn & Welch, Oklahoma City, Okl., Trippet, Yoakum & Ballantyne, Los Angeles, Cal., for defendant.

CHANDLER, Chief Judge.

This action is brought by plaintiffs Clady Royer, Blanton W. Hoover and James T. Hoover, doing business as Track Service Company, against the defendant Stoody Company for damages and injunctive relief, and is before the court on the plaintiffs' motion for partial summary judgment on the issue of liability only and on defendant's motion for summary judgment.

Plaintiffs' company, among other things, repairs and rebuilds used rollers on track type equipment and in 1958 developed a new method of rebuilding such rollers by flame hardening the flanges on the rollers. Plaintiffs accomplished this by using a device called a "Flange Master" which they also developed. It appears that one of the most important features of the "Flange Master" is that it utilizes a less expensive type metal wire than that used in the process of rebuilding rollers heretofore. The defendant sells a more expensive special high alloy metal wire used in one of the most suc-

cessful methods of roller rebuilding employed prior to the advent of the "Flange Master."

Subsequent to the perfection of the "Flange Master," plaintiffs carried on a sales campaign to publicize the device, directing the campaign toward those who might be interested in buying one of the devices and toward those who might be needing repair or rebuilding work done on rollers which plaintiffs could do through use of their machine. Plaintiffs therefore sell "Flange Masters," employ them in their own roller rebuilding business, and, in addition, sell the more economical metal wire, produced by companies other than defendant, which is used with their machine.

In May, 1959, the defendant corporation bought a roller from plaintiffs which had been rebuilt through use of the "Flange Master" and the process developed by plaintiffs. Thereafter defendant formulated and distributed in Oklahoma and throughout the United States a printed pamphlet critical of plaintiffs' new process and device to those interested in or who might be interested in roller rebuilding, many of whom plaintiffs allege were their customers or potential customers. Attached to the pamphlet was a slip with language thereon to the effect that defendant corporation had been asked to "check the validity of claims made by Track Service Company of Oklahoma City, Oklahoma, about their Flange Master." The slip further stated that the pamphlet to which it was attached contained a report on tests conducted by defendant's laboratory on a sample rebuilt roller obtained from Track Service Company. The pamphlet, among other things, listed the advertising claims of plaintiffs regarding the "Flange Master," then listed certain facts and figures, allegedly obtained from defendant's laboratory tests, which indicated that the greater part of plaintiffs' advertising claims were erroneous, misleading or untrue, and that plaintiffs' new process was inferior to the one wherein defendant's product was used.

Plaintiffs allege: (1) that this is a suit for damages for unfair business competition and unfair trade practices; (2) that the defenses and law applicable in libel and slander cases do not apply in an action for unfair business competition and that therefore plaintiffs did not have to allege special damages and the defenses of privilege, good faith, truth or expressions of opinions honestly made and the protection of an interest are not valid in this action; and (3) that they are entitled to a partial summary judgment, on the question of liability only, since defendant has admitted that it is in competition with plaintiffs and that it published and circulated the pamphlet in question, for the reason that the writing complained of is actionable per se and defendant has pleaded no legal defense to the suit.

The defendant contends: (1) that this is a trade libel case rather than one involving unfair business competition; (2) that this suit should be dismissed and summary judgment entered for defendant since plaintiffs have not alleged special damages; (3) that there can be no libel per se in a trade libel suit; (4) that truth is a defense in this action; (5) that its defenses to the effect that the communication in question was privileged and made without malice, and, if untrue, was an expression of opinion honestly made are valid defenses in a trade libel suit; and (6) that injunctive relief cannot be granted in a trade libel case.

An examination of cases involving fact situations and circumstances similar to those involved in this suit indicate that they have been instituted and courts have considered them under various designations, among them libel, trade libel, disparagement of property, unfair competition and malicious interference with business. However, their being called one type of action or another has not prevented courts from applying in a given case principles, elements or law governing decision in one of the other type actions used as a vehicle for such a suit.

■ There is sufficient authority in Oklahoma law and elsewhere to allow plaintiffs to bring this suit as one for unfair competition. Schonwald v. Ragains, 32 Okl. 223, 122 P. 203, 39 L.R.A., N.S., 854; Dehydro, Inc. v. Tretolite Co., D.C.N.D.Okl., 53 F.2d 273; Black & Yates, Inc. v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 148 A.L.R. 841, certiorari denied 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539; Bourjois, Inc. v. Park Drug Co., 8 Cir., 82 F.2d 468. In Dehydro, Inc. v. Tretolite Co., supra, the court had this to say:

> "I cannot agree with the contention that this is an action to enjoin a libel or slander. The gravamen of the action here is to enjoin the defendant from committing acts constituting unfair competition, and from destroying the business of the complainant. * * *
>
> "Where the gravamen of the action is to enjoin unfair competition, the question of libel and slander is only incidental to the action and such an action is not one to enjoin a libel or slander." [53 F.2d 273]

The court in the case of Bourjois, Inc. v. Park Drug Co., supra, stated that it was the duty of a court of equity to enjoin unfair competition waged by means of slander, defamation or misrepresentation of a competitor's goods. To the same effect is the following quotation from Old Investors' & Traders' Corp. v. Jenkins, 133 Misc. 213, 232 N.Y.S. 245, 246, affirmed 225 App.Div. 860, 233 N.Y.S. 845:

> "There is, however, much more involved in this case than the mere publishing of a libel. The complaint is based on the theory of unfair trade competition. The mailing or sending of false, untrue, and dishonest statements to the customers of an established firm, for the purpose of injuring the firm and its business and deceiving the public and plaintiff's customers, is a form of unfair trade competition * * ."

However, it is necessary in order to maintain an action for unfair competition that plaintiffs allege (as they have) and prove that the publication complained of was false, untrue, dishonest, misleading, intended to deceive or contained misrepresentation, dishonest statements of fact or deceptive statements of fact. Restatement of Torts, Sec. 634 and comment thereon. See also 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 122, p. 409, which states as follows:

> " * * * and the making of false, misleading and dishonest statements to customers of a business competitor for the purpose of injuring the latter's business and deceiving his customers constitutes unfair competition."

In the case of Edwin L. Wiegand Co. v. Harold E. Trent Co., 3 Cir., 122 F.2d 920, 924, the court, in discussing a cause of action based on unfair competition, stated:

> "Plaintiff failed to prove disparagement since it failed to show the necessary 'statement about a competitor's goods which is untrue or misleading, and which is made to influence, or tends to influence the public not to buy.' " (Emphasis supplied.)

The cause of action in that suit for unfair competition was based on trade libel and disparagement of property and the court considered the matter in that fashion. The Supreme Court of Oklahoma in Schonwald v. Ragains, supra, quoted from Doremus et al. v. Hennessy, 176 Ill. 608, 52 N.E. 924, 54 N.E. 524, 43 L.R.A. 797, 802, the following language:

> "It is clear that it is unlawful and actionable for one man, for unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss." [32 Ohio 223, 122 p. 210] (Emphasis supplied.)

Unfair competition encompasses a number of evils with which business can be afflicted. This is illustrated in National Lead Co. v. Wolfe, 9 Cir., 223 F.2d 195, where it is said that unfair competition is available in all cases where fraud is practiced by one securing the trade of another; and that, in order to make out a case of unfair competition, it is only required that the natural and necessary consequences of the accused conduct be such as to cause deception. Another statement along this line is found in Brooks Bros. v. Brooks Clothing of California, D.C.S.D.Cal., 60 F.Supp. 442, 447, to this effect:

"The law of unfair competition is an offshoot of equity in its attempt to protect persons engaged in business from the unfair practices of others. It is so broad a concept that authors like Mr. Nims have deplored the adoption of the phrase. * * *

"But, in the last analysis, what the courts were trying to do, in each case, was to determine whether the particular action of a person was what was the decent thing to do in trade."

The court further quoted from 63 C.J. 414 as follows:

"No inflexible rule can be laid down as to what conduct will constitute unfair competition. Each case is in a measure a law unto itself. Unfair competition is a question of fact * * * the universal test is whether the public is likely to be deceived."

The more recent view is that unfair competition is not confined to "passing off" or "misappropriation" cases. Black & Yates, Inc. v. Mahogany Ass'n, supra; Brooks Bros. v. Brooks Clothing of California, supra.

There are numerous cases refuting or tending to refute defendant's contention that this suit can only be brought for libel or trade libel, other than those heretofore cited, though in those cases the action is called something other than unfair competition, or is merely described as a tort. Paramount Pictures v. Leader Press, 10 Cir., 106 F.2d 229; Stebbins v. Edwards, 101 Okl. 188, 224 P. 714; National Life & Accident Ins. Co. v. Wallace, 162 Okl. 174, 21 P.2d 492; Chilton v. Oklahoma Tire & Supply Co., 180 Okl. 39, 67 P.2d 27. The Court of Appeals in Paramount Pictures v. Leader Press, supra, said this [106 F.2d 231]:

"One without privilege so to do, has no right to issue and publish an untrue or deceptive statement of fact which has a disparaging effect upon the quality of another's property, under circumstances which would lead a reasonable person to foresee that it will have such effect. The making of such statement in such circumstances is tortious."

The court in Stebbins v. Edwards, supra, rejected the argument that the action was one for slander stating [101 Okl. 188, 224 p. 714]:

"It is our opinion that counsel for the defendants are in error in assuming that the action is one to recover for slander. While the petition contains allegations of alleged defamatory statements in connection with the defendant and his business, the gist of the action as set out in this petition is for the recovery of damages alleged to have been sustained by reason of the unlawful act of the defendants in injuring the business of the plaintiff by false and malicious statements and representations, and malicious acts performed by the defendants with the intention of ruining the plaintiff's business."

The court also quoted the following from Brown et al. v. American Freehold Land Mortgage Co. of London, 97 Tex. 599, 80 S.W. 985, 988, 67 L.R.A. 195:

"The various acts which are charged in the petition—for instance, the representation that plaintiffs were dishonest and unreliable, and that they were bankrupt and insolvent—were simply allegations showing the methods by which the defendants accomplished the purpose

of destroying their business. It was not sought to recover upon the allegations constituting libel and slander, but the facts stated were the evidence by which the cause of action would be established."

In Chilton v. Oklahoma Tire & Supply Co., supra, it was held that:

"A person has a right to carry on and prosecute a lawful business in which he is engaged without unlawful molestation or interference from any person, and any malicious interference with such business is an unlawful act and an actionable wrong." [180 Okl. 39, 67 P.2d 27]

That case also contained the following comment:

"It is equally well settled that the cause of action exists where unlawful means, such as fraud, intimidation, or defamation have been used. If defamation is the means employed, the action is not one for libel or slander, but for the common-law wrong of malicious interference with contractual rights."

■■■ In regard to defendant's contention that plaintiffs have failed to state a cause of action for failure to allege special damages, this is a suit based on unfair competition and, as heretofore indicated, the law governing the bringing of suits for libel or trade libel are not applicable to suits for unfair competition, disparagement of property or malicious interference with business. Even in trade libel cases, the trend is toward doing away with the necessity of alleging special damages. For example, in Edwin L. Wiegand Co. v. Harold E. Trent Co., supra, it is said:

"The derogatory remarks attributed to the defendant fall far short of the trade libel. While it is true that the plaintiff need not allege and prove special damage, equity may not act if the plaintiff shows no present or possible injury." [122 F.2d 924]

The trend was discussed in Black & Yates, Inc. v. Mahogany Ass'n, supra, where the court also said [129 F.2d 235]:

"But the phrase 'pure trade libel' has been called a misnomer which has resulted in ascribing to this tort the legal attributes of libel and slander, particularly the inherent characteristics of defamation, and in the consequent application of the dogma that a court of equity will not enjoin a continuing libel or slander.

"There is a clear line of demarcation between the two torts which is often overlooked. The first is concerned with interests of personality, the other with interests in property."

Maytag Co. v. Meadows Mfg. Co., 7 Cir., 45 F.2d 299, involved a suit for unfair competition and held that special damages need not be alleged. To the same effect is Aetna Life Ins. Co. v. Mutual Benefit Health & Acc. Ass'n, 8 Cir., 82 F.2d 115, which was a libel case.

Defendant contends that in a trade libel case there is no such thing as libel per se, and cites in support of this National Refining Co. v. Benzo Gas Motor Fuel Co., 8 Cir., 20 F.2d 763, 771. In the first place, that case was instituted as a straight libel action. In the second, it fails to support the proposition of the defendant, as the following quotation illustrates:

"The result of the above-cited cases appears to be that, where the publication on its face is directed against the goods or product of a corporate vendor or manufacturer, it will not be held libelous per se as to the corporation, *unless* by fair construction and without the aid of extrinsic evidence it imputes to the corporation, fraud, deceit, dishonesty, or reprehensible conduct in its business in relation to said goods or product. (Emphasis supplied)

\* \* \* \* \*

" \* \* \* We think the article was not libelous per se, and was not

actionable unless special damage was alleged and proven. Neither of these requisites was met."

Furthermore, that court held that it is not necessary that the party libelled be named in the libelous article where the article attacks such party's product.

■ Plaintiffs allege that the publication in question is actionable per se, and there is authority which tends to support that view. The following excerpt from Maytag Co. v. Meadows Mfg. Co., supra, is to that effect [45 F.2d 302]:

"The authorities fully sustain the conclusion that where a libel contains an imputation upon a corporation in respect to its business, its ability to do business, and its method of doing business, the same becomes libelous per se, and that special damages need not be alleged."

See also Aetna Life Ins. Co. v. Mutual Benefit Health & Acc. Ass'n, supra. However, as previously stated, elements in libel and slander cases are not or should not be applicable in actions involving unfair competition. Plaintiffs should not be allowed to choose to be governed by those principles in cases involving pure defamation which are favorable, and to reject those which are not, though some courts which have considered similar cases have apparently applied one or more elements of libel and slander law to actions for unfair competition. If there could be libel per se in an action for unfair competition, then the publication in question would be libel per se. When defendant takes each of plaintiffs' advertising claims and purports to show that defendant's laboratory tests prove they are for the most part false, surely such constitutes an imputation of fraud, deceit, dishonesty or other reprehensible conduct on the part of plaintiffs; and this plus the other statements in defendant's publication contain an imputation upon plaintiffs in respect to their business, their ability to do business and their method of doing business.

■ Although the defense of privilege appears to be allowed in actions for disparagement of property (Restatement of the Law of Torts, Sec. 648; Paramount Pictures v. Leader Press, supra), it apparently has not been applied to any extent in unfair competition cases. This defense is also one which is associated with suits brought for defamation. In any event, under the circumstances present here, even if the defense were one which could be asserted in suits for unfair competition, the defendant could not bring itself within the class of persons having the right to claim the privilege. Restatement of the Law of Torts, Sec. 648. See also Aetna Life Ins. Co. v. Mutual Benefit Health & Acc. Ass'n, supra, which was a straight libel case or was so called, where the court had this to say about the matter [82 F.2d 119]:

"It would be remarkable if a communication, having for its manifest object harm to the business of a competitor, could be viewed as a bona fide discharge of a public or private duty, legal or moral, in the prosecution of the writer's own rights and interests (White v. Nichols [Nicholls], 3 How. 266, 11 L.Ed. 591), and the protection of the common interest involved. It has yet to be accepted that any business is privileged to advance itself by pulling down a competitor through unfair trade practices."

■ Although the point now appears to be moot, there is ample authority for granting an injunction in an unfair competition suit, and there is also support for the granting of such relief in a trade libel case. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 87; Bourjois, Inc. v. Park Drug Co., supra; Dehydro, Inc. v. Tretolite Co., supra; Maytag Co. v. Meadows Mfg. Co., supra; Black & Yates, Inc. v. Mahogany Ass'n, supra.

In view of the foregoing, the motions of plaintiffs and defendant for summary judgment must be overruled, and it is so ordered.