**Don OVERBECK, Appellant,**

v.

**QUAKER LIFE INSURANCE COMPANY, Appellee.**

**No. 60775.**

Court of Appeals of Oklahoma, Division No. 1.

Sept. 25, 1984.

Rehearing Denied Dec. 4, 1984.

Certiorari Dismissed June 27, 1988.

Earl W. Wolfe, Tulsa, for appellant.

Stephen L. Andrew and A. Lynn Miller, Sublett, McCormick, Andrew & Keefer, Tulsa, for appellee.

ROBINSON, Judge:

The District Court of Tulsa County sustained Defendant's Demurrer for failure to state a cause of action and Plaintiff appeals.

Appellant (Plaintiff in the original cause of action) is a licensed insurance agent who entered into a general agent's contract with Appellee (Defendant, Quaker Life Insurance Company). The agent contract provides in pertinent part that "This Contract may be terminated with or without cause by either the Company or the General Agent upon five days written notice to the other party". While Appellant was still under contract with Appellee, the Appellant sub-contracted with a third party, Duane Pratt, to sell the Appellee's insurance policies. Duane Pratt received 60% of the commission from his sales and the Appellant received 40% as an over-ride. The Appellee being fully aware of the sub-agency contract, entered into a general agent contract with Pratt, thus abolishing the Appellant's relationship with Pratt and eliminating Appellant's 40% override. Appellee then terminated the general agency contract with Appellant consistent with all notice provisions of the general agent contract.

Appellant filed suit in the District Court of Tulsa County alleging interference with a prospective economic advantage and bad faith termination of a contract. The insurance company demurred, stating that Plaintiff failed to state a cause of action. The trial court sustained Defendant's demurrer and thus Appellant appeals arguing that the trial court erred by holding that a cause of action did not exist for interference with a prospective economic advantage or bad faith breach of contract.

■ Appellant argues that interference with a prospective economic advantage is synonymus with interference with contractual or business relations. This comparison is not entirely accurate. Although both torts do have similarities, the underlying theories of liability differ. Interference with a prospective economic advantage usually involves interference with some type of reasonable expectation of

profit, whereas interference with a contractual relationship results in loss of a property right. Whatever comparisons are made, one thing is certain—defining the scope of liability and allowable damages are still substantially unsettled issues. One author has noted that at present there is no single prevailing position. Instead, most courts recognize one of three contemporary views as to the elements of tortious interference with a prospective economic advantage.[1]

In most instances, the tort of interference with a prospective economic advantage is not recognized unless some intentional or improper conduct or means exist on the part of the defendant. Prosser notes the following:

> Again the tort began with "malice", and it has remained very largely a matter of at least intent to interfere ... cases have turned almost entirely upon defendant's motive or purpose, and the means by which he has sought to accomplish it.

*Prosser on Torts*, § 130, at 952 (1971).

■ We believe the subtle differences between tortious interference with a prospective economic advantage and tortious interference with a contractual or business relation is more than just a semantical one, and thus we decline to treat the two synonymously as Appellant urges. Oklahoma Courts have recognized tortious interference with a business or contractual relationship in several cases.[2] However, in these cases, the defendant's conduct complained of was either allegedly malicious or intentional and almost always hinged on derogatory statements intended to ruin the plaintiff's business or reputation. Also we can find no authority in Oklahoma which applies tortious interference to an at-will contract, which is the case here.

In reviewing Appellant's original petition in the most favorable light, the facts do not indicate malicious or even intentional conduct on the part of the Appellee. The facts do suggest that Appellee persuaded sub-agent Pratt to terminate his relationship with Appellant and then urged Pratt to work for the Appellee insurance company as their general agent. This persuasion alone is not deemed unlawful.

> It is not unlawful for one, by fair means and lawful argument or persuasion, to interfere with the contractual relations of another, and without doubt one person has the legal right to persuade another ... to quit trading with another, provided always such persuasion and argument is fair, ... and is made with the honest intent and purpose of fairly bettering one's own business, trade, or employment, and not for the primary object of wrongfully destroying honest competition, or wrongfully injuring one's competitor.

*National Life and Accident Insurance Company v. Wallace*, 162 Okl. 174, 21 P.2d

---

1. The three views are the Restatement (First) of Torts, Restatement (Second) of Torts, and the Oregon View. The Restatement (First) view uses an intentional tort standard, whereas the Restatement (Second) relies on a negligent tort standard. Under the Oregon View, the defendant's liability must arise from improper motives or means plus an improper intent to interfere. Note, *Leigh Furniture and Carpet Co. v. Isom: Utah's New Tort for Interference With Prospective Economic Relations.* 10 J.Contemp.L. 227 (1984).

2. *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 427 (Okl.1979) (insurance company association allegedly maliciously interferred with plaintiff's business relations by making derogatory statements and requesting that plaintiff be investigated—court held insufficient evidence to establish cause of action for wrongful interference); *Crystal Gas Co. v. Oklahoma Natural Gas, Co.,* 529 P.2d 987 (Okl.1974)

(ONG allegedly represented to plaintiff's potential customers that plaintiff's gas lines were unsafe, thus plaintiff lost a franchise election—court held defendant's conduct was insufficient to establish tortious interference with business relation); *Chilton v. Oklahoma Tire and Supply Co.,* 67 P.2d 27 (Okl.1937) (defendant allegedly made derogatory statements to state distributor that plaintiff was not adequately servicing his accounts); *Stebbins v. Edwards,* 224 P. 714 (Okl. 1924) (plaintiff and defendant entered into a lease contract, defendant then circulated reports that plaintiff was unreliable—court held defendant's statements were made with intention of destroying plaintiff's business and thus defendant's actions were unlawful); *Schonwald v. Ragains,* 32 Okl. 223, 122 P. 203 (1912) (defendant's ice company refused to sell or deliver ice to any customers who were plaintiff's customers —court held defendant's acts were malicious and unwarranted).

492, 494 (1933) (quoting *Schonwald v. Ragains*, 32 Okl. 223, 122 P. 203 (1912)).

Furthermore, legitimate and fair competition is essential to our free enterprise system. In *Schonwald v. Ragains*, 32 Okl. 223, 122 P. 203 (Okl.1912) the court noted at page 207 that "legitimate competition, by fair means, is always lawful and no cause of action accrues to one who is unable to compete with his stronger competitor".

Appellee's conduct in this instance was by no means illegal or malicious. Appellee did not engage in any improper means to "lure" Pratt to his employ. We therefore agree with the trial court that Appellant failed to state a cause of action and thus the Demurrer should be sustained.

Appellant's second argument on appeal is that the trial court erred in holding that Appellant did not state a cause of action for the tort of bad faith breach of contract. We strongly agree with Appellant that there is an implied duty of good faith in dealings in contractual relationships. However, this duty of good faith must be viewed in relation to the type of transaction involved. The distinguishing feature of the case at bar is the undisputed fact that the general agent contract was for an indefinite term and thus is terminable at will by either party.

In *Ned Hall v. Farmer's Insurance Exchange*, 55 Okl.B.J. 1297 (June 23, 1984) this court had the opportunity to apply the tort of bad faith breach of contract to an at-will contract. In *Hall*, an insurance agent, Ned Hall, entered into an agent agreement with Farmer's Insurance. The agreement was for an indefinite term and could be terminated by either party on three months written notice. Subsequently the agent was fired and suit was filed alleging bad faith termination of a contract. In *Ned Hall*, we held that

> ... when an indefinite term agency agreement, such as the one before us, provides a method of termination, but is silent concerning the grounds for termination, such silence indicates an intent of the parties that the contract can be terminated at will or without cause and the court cannot read into or supply the contract, by the implication of good faith and fair dealing, a reasonable or just cause.

*Ned Hall v. Farmer's Insurance Exchange*, 55 Okl.B.J. 1297, 1300 (June 23, 1984).

Appellee in the case at bar was merely exercising his option to terminate the contract, with or without cause. Appellant knowingly and voluntarily signed the general agent contract, and this express agreement will govern any implied duties of good faith.

We have not applied the tort of bad faith breach of contract to an at-will contract in the past, and the facts in this case do not suggest it would be proper to apply such now. The trial court was correct in sustaining the Demurrer for failure to state a cause of action.

AFFIRMED.

YOUNG, P.J., and REYNOLDS, J., concur.