2001 OK CIV APP 54

**Keith McNICKLE, Appellant,**

v.

**PHILLIPS PETROLEUM CO., a foreign corporation, Appellee.**

No. 92187.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 29, 1999.

Certiorari Denied April 9, 2001.

James Patrick Hunt, Tulsa, OK, for Appellant.

Kimberly Lambert Love, Mary L. Lohrke, Boone, Davis, Hurst & Dickman, Tulsa, OK, for Appellee.

REIF, J.

¶ 1 Plaintiff Keith McNickle appeals the summary judgment in favor of defendant Phillips Petroleum Company on his claims of tortious interference with contract and tortious interference with prospective economic advantage. Mr. McNickle alleged that Phillips (1) caused his termination from employment with Southwestern Bell Telephone Company, and (2) discouraged a prospective employer, Crisp Communications, from hir-

ing him. Southwestern Bell terminated Mr. McNickle and Crisp declined to hire him, because Phillips expressed an objection to Mr. McNickle working on its premises under its service contracts with Southwestern Bell and Crisp. Phillips raised its objection to Mr. McNickle's continued assignment to its premises following a dispute over Mr. McNickle's use of computer equipment that belonged to Phillips.[1] Phillips contested its liability on grounds that (1) Mr. McNickle's at-will employment with Southwestern Bell was not the type of contractual relation protected by tort law, and (2) the expression of its objections to Mr. McNickle working on its premises was a privileged act to protect its business interests. In granting summary judgment to Phillips, the trial court did not indicate whether it was based on both of these grounds, or only one of them. Upon review, we hold that summary judgment was proper only on the ground of privilege.

### I.

¶ 2 The Oklahoma Court of Civil Appeals has observed that there is "no authority in Oklahoma which applies tortious interference to an at-will contract." *Overbeck v. Quaker Life Ins. Co.*, 1984 OK CIV APP 44, ¶ 6, 757 P.2d 846, 848. However, the court made this observation in the course of drawing a distinction between the tort of interference with prospective economic advantage and tortious interference with contractual relations. The court declined to treat interference with prospective economic advantage, as pleaded by plaintiff Overbeck, the same as interference with contractual relations. Regardless of the theory or cause of action pled by Overbeck, the court ultimately concluded that Quaker Life "did not engage in any improper means to 'lure' [Overbeck's sub-agent] to [its] employ" as a general agent. Overbeck complained about this action because Overbeck would have received a 40% commission on any insurance that the sub-agent sold, if the sub-agent had remained Overbeck's employee.

¶ 3 The most that can be said about *Overbeck* vis-à-vis the at-will employment contract is that the hiring away of an employee who is the at-will employee of another is not tortious interference with the at-will employment contract. *Overbeck* is of little help in determining liability of one who induces the at-will employer to terminate the at-will employee.

¶ 4 Oklahoma has long recognized that "it is an actionable wrong to procure the breach of an existing contract of employment, although the means used to do so do not exceed mere persuasion, provided this is done maliciously, especially where the contract was one for personal services." *Chilton v. Oklahoma Tire & Supply Co.*, 180 Okla. 39, 67 P.2d 27, 29 (1937). The court further stated that "the cause of action [also] exists where unlawful means, such as fraud, intimidation or defamation have been used." *Id.*

¶ 5 Even though the *Chilton* case involved a contract for warranty-type service and repairs of refrigerators, it was later cited by the supreme court as the basis for the rule that "[t]he right of any person to pursue his chosen vocation without unlawful interference from third persons is a valuable right which the courts protect." *Taxicab Drivers' Local Union No. 889 v. Pittman*, 1957 OK 259, ¶ 18, 322 P.2d 159, 166 (per curiam) (citation omitted). The court said "the gravamen of this cause of action for damages is the defendants' interference with the plaintiff's job." *Id.*

¶ 6 In *Del State Bank v. Salmon*, 1976 OK 42, ¶ 9, 548 P.2d 1024, 1026–27 (Okla.1976), the supreme court further refined the tort of interference with an employment contract. The court said: "If one, without a privilege, intentionally interferes; if unlawful means are used; or if done without justifiable cause; then he becomes liable to the employee for proximately caused harm." The court further indicated that the "[i]ntentional interference may be malice in the law without personal hatred, ill will, or spite." *Id.* However, the court also said that "[o]ne may lawfully interfere with the contractual relations of

---

1. Phillips contended that Mr. McNickle did not follow proper procedure in acquiring the equipment and was disrespectful to the Phillips employee who asked about Mr. McNickle's acquisition of the equipment. Phillips also questioned Mr. McNickle's qualifications to provide the technical services under the contracts in question.

another if by fair means, if accompanied by honest intent, and if to better one's own business and not to principally harm another." *Id.* at ¶ 10, 548 P.2d at 1027.

¶ 7 The right to lawfully interfere is also called privilege. In the *Del State Bank* case, the bank admitted that it "did intentionally interfere with Salmon's employment" as president of a company that was indebted to bank. *Id.* at ¶ 11, 548 P.2d at 1027. The court found that the Bank's "economic interest as a substantial creditor" was a sufficient basis for a privilege to interfere and that "bank's acts were designed to benefit the bank." *Id.* at ¶¶ 11, 13, 548 P.2d at 1027. The court observed that "[o]ne need not agree with the bank's actions," that they may have been "strong, aggressive, and intentionally made," and even "deplorable," but held that the privilege was preserved because "[t]he bank's primary object was to better its financial position [and not] to wrongfully harm Salmon, though the acts were to his detriment." *Id.* at ¶ 13, 548 P.2d at 1027.

¶ 8 In *Paul Hardeman, Inc. v. Bradley,* 1971 OK 71, ¶ 4, 486 P.2d 731, 732, the supreme court held that a discharged employee of a subcontractor did not have a cause of action against the prime contractor for requesting the subcontractor to remove the employee from the construction project. Among the complaints that the prime contractor had for requesting the removal of the subcontractor's employee were "by-passing [the prime contractor's] supervisors" and "a personality clash" between the subcontractor's employee and the prime contractor's superintendent. The court noted that the prime contractor reserved the right of continuing approval of the subcontractor's personnel and could request their replacement in the event the prime contractor disap-

proved. The court's syllabus explains that the prime contractor's contractual right of continuing approval was equal or superior to the rights of the replaced employee of the subcontractor and that the prime contractor could exercise that right with impunity from suit by the replaced employee.

¶ 9 This rule of privilege based on an equal or superior right was discussed more fully in *Del State Bank,* 1976 OK 42 at ¶ 15, 548 P.2d at 1027–28. The court stated,

> Procuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse, and is justification for what would otherwise be an actionable wrong.... Persons acting for the protection of contract rights of their own which are of an equal or superior interest to another's contractual rights may invade the latter with impunity.

■ ¶ 10 In the evolution of the tort of interference with the employment contractual relationship in Oklahoma, there is nothing to suggest that the tort would not apply in cases of interference with an at-will contract of employment when the party interfering acts without privilege.[2] The focus, then, is not on the type of employment contract, but rather on the rights, purpose, means and intent of the party interfering. Summary judgment is properly granted on claim of tortious interference with the employment contractual relation where "[d]efendants [have] produced admissible evidence of a proper purpose for their actions [and a plaintiff] provides no admissible evidence of an improper or unjustified act by [defendants]." *Haynes v. South Community Hospital Management, Inc.,* 1990 OK CIV APP 40, ¶ 18, 793 P.2d 303, 307.

---

**2.** The Oklahoma Court of Civil Appeals has cited approvingly to the observation in Prosser, *Handbook of the Law of Torts* § 129 (4th ed.1971), that "virtually any type contract is sufficient as a foundation for the [of tortious interference]." *Thompson v. Box,* 1994 OK CIV APP 183, ¶ 8, 889 P.2d 1282, 1284 (1994). In addition, the Restatement (Second) of Torts § 766A (Comment d), expressly recognizes that an at-will contract can be the subject of tortious interference. Even one of the cases relied upon by Phillips in support of its motion for summary judgment—

*Williams v. Shell Oil Company,* 18 F.3d 396, 402 (7th Cir.1994) (citation omitted)-recognizes that "[a]n oral at-will contract can be a valid contract in an action of tortious interference." The Supreme Court of the United States has also recognized that claims cognizable in the federal courts can be based on tortious interference with an at-will employment contract. *See Haddle v. Garrison,* 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) (citing *Truax v. Raich,* 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), and 2 T. Cooley, *Law of Torts,* 589–91 (3rd ed.1906)).

¶ 11 In the instant case, summary judgment was properly granted to Phillips because there was no controversy concerning Phillips' claim of privilege in requesting Southwestern Bell to remove Mr. McNickle from working on Phillips' premises. Phillips attached a copy of its contract with Southwestern Bell as a summary judgment exhibit and Mr. McNickle did not controvert the contract in any respect. Paragraph 12 of the contract reserves to Phillips "the right to evaluate the Contractor's overall performance to ensure satisfactory compliance with this Agreement." Paragraph 1 specifies that "services in connection with the Work shall be specified by [Phillips] through ... designated representative(s)." The reservation of the right to evaluate Southwestern Bell's performance clearly contemplates that any performance that Phillips evaluates to be unsatisfactory is a proper subject for communication from Phillips to Southwestern Bell. Phillips had a right equal or superior to Mr. McNickle's interest in his employment to ask Southwestern Bell to rectify what it deemed unsatisfactory performance by Mr. McNickle in undertaking services using Phillips' equipment without the approval of a Phillips designated representative.

¶ 12 Mr. McNickle has maintained that he has controverted the privilege by his testimony that he did not know that he needed to ask permission from the Phillips representatives who gave him other work assignments. He has explained that he acquired the equipment in the same way that he did during prior employment with another Phillips contractor. He also has repeated statements allegedly made to him by Phillips' managers and personnel not involved with the contract that he did nothing wrong.

¶ 13 The issue, however, is not whether Mr. McNickle acted out of mistake, misunderstanding, or ignorance. The issue is whether the action taken by Phillips in response to Mr. McNickle's failure to ask permission from the Phillips representatives responsible for the Southwestern Bell contract was fair, with honest intent, and to better Phillips' business and not principally to harm Mr. McNickle.

¶ 14 To be "fair," the Phillips manager responsible for the Southwestern Bell contract did not have to hear Mr. McNickle's side of the story, or to consider the opinions of other Phillips personnel and managers who had no connection with the Southwestern Bell service contract before exercising the evaluation-of-performance right under the contract. The Phillips manager for the Southwestern Bell contract could rely on the account of the problem as reported by the Phillips employee who dealt directly with Mr. McNickle. Contrary to the opinion of Mr. McNickle and his Southwestern Bell supervisor, acquiring and using Phillips' equipment in connection with providing services under the contract without the knowledge or permission of the Phillips representatives responsible for the contract is something about which the Phillips representatives were justified to be upset and dissatisfied.

¶ 15 Reporting their dissatisfaction and requesting Mr. McNickle to be removed from his assignment to Phillips may have been a "strong, aggressive, and intentionally made" measure that worked to Mr. McNickle's detriment, but it was not "improper and unfair ... so as to destroy that privilege." *Del State Bank,* 1976 OK 42, ¶ 13, 548 P.2d at 1027. Indeed, the Phillips representatives did not indicate that their request for removal of Mr. McNickle was not open to further discussion. More importantly, there is absolutely no evidentiary material to show that the Phillips representatives requested, suggested, or expected Southwestern Bell to terminate Mr. McNickle's employment.

¶ 16 For purposes of deciding whether Phillips was entitled to privilege, it is also immaterial that Mr. McNickle has controverted Phillips' claims that he was disrespectful and not qualified to provide services under the contract. Again, the Phillips manager responsible for the Southwestern Bell contract could rely on the account of the problem given by the Phillips employee who dealt directly with Mr. McNickle and his own knowledge of Mr. McNickle's background. That was a legally sufficient basis for the manager to exercise Phillips' privilege to communicate Phillips' concerns about Mr. McNickle's unapproved performance of the

contract. Also, as previously noted, the Phillips manager did not indicate that these matters were not open to further discussion between Phillips and Southwestern Bell *before* Southwestern Bell made any decision or took any action on Phillips' complaint about Mr. McNickle.

¶ 17 Finally, Mr. McNickle has provided no evidentiary basis to show that the Phillips manager responsible for the Southwestern Bell contract and the Phillips employee who dealt directly with Mr. McNickle had any improper or unjustified purpose in objecting to his continued assignment to the service contracts. In his deposition, Mr. McNickle admitted that he knew of no evidence or facts that would indicate what their thoughts, motives, or intentions were. He relies primarily on (1) the fact that other Phillips managers and personnel, unconnected with the Southwestern Bell contract, have allegedly told him that he did nothing wrong, and (2) his affidavit testimony that his Southwestern Bell supervisor "felt this [problem with Mr. McNickle] was another way that [the Phillips manager and employee who dealt with Mr. McNickle] had of forcing Southwestern Bell to leave [another employee they wanted on the contract]." As previously discussed, the opinions of Phillips managers and personnel who had *no connection* with the Southwestern Bell contract are immaterial to the exercise of a right under the contract by the Phillips manager responsible for the contract. Also, Mr. McNickle's testimony about the theory of his supervisor was hearsay and speculation which was not corroborated by any deposition testimony from the supervisor.

## II.

¶ 18 Mr. McNickle's claim of tortious interference with prospective economic advantage is based upon the pleading allegation that "defendant [Phillips] has prevented yet another Phillips contractor, Crisp Communications, from offering employment to the plaintiff." Phillips denied this allegation in its answer and specifically contested it in the motion for summary judgment and supporting affidavits.

¶ 19 The affidavit of the Phillips employee who dealt directly with Mr. McNickle on the Southwestern Bell contract recounts that (1) he was contacted by the owner of Crisp Communications "to check Mr. McNickle's references," (2) he "advised [him] that Phillips had some problems with Mr. McNickle while he worked on-site for Southwestern Bell and that Phillips had requested Southwestern Bell to remove Mr. McNickle from the account," and (3) "at no time did [he] tell [the owner of Crisp] not to hire Mr. McNickle." The affidavit of the owner of Crisp Communications recounts that (1) he "decided to check Mr. McNickle's references [and] contacted [the Phillips employee who dealt directly with Mr. McNickle] to inquire about Mr. McNickle's performance," (2) he "was told that Phillips had some problems with Mr. McNickle [and] that Phillips had requested that Mr. McNickle be removed from the Phillips account [with Southwestern Bell]," (3) he was not told "not to hire Mr. McNickle," and (4) he "made the decision not to hire Mr. McNickle because the only opening available was the on-site technician position at Phillips [and] Mr. McNickle's salary requirements were higher than Crisp Communication could pay for the position needed."

¶ 20 Mr. McNickle's response to Phillips' motion for summary judgment and his supporting affidavit both similarly state that (1) the owner of Crisp Communications offered him a job, (2) he later withdrew the offer after speaking with someone at Phillips who told him "they said they can't use you [at Phillips] right now," and (3) "no other reason [was given] for withdrawing the job offer."

¶ 21 Oklahoma does recognize tortious interference with prospective economic advantage. *Overbeck*, 1984 OK CIV APP 44, 757 P.2d 846. However, this tort "is not recognized unless some intentional or improper conduct or means exist on the part of the defendant." *Id.*, 757 P.2d at 848. "[A] truthful response to [a] direct inquiry [about work-performance does] not unjustifiably interfere with a [prospective employees'] expectancy." *Delloma v. Consolidated Coal Co.*, 996 F.2d 168, 174 (7th Cir.1993). The response by the Phillips employee who di-

rectly dealt with Mr. McNickle to the direct inquiry by the owner of Crisp Communications was truthful.

¶ 22 Because Mr. McNickle bases his claim of tortious interference with prospective economic advantage on the communication from the Phillips representative to the owner of Crisp Communications, and the substance of that communication was truthful, the court did not err in granting Phillips' summary judgment on this claim. Where the summary judgment record actually presented reveals that there is no substantial controversy as to a fact material to plaintiff's cause of action, and this fact is in the defendant's favor, the plaintiff has the burden of showing that evidence is available which would justify trial of the issue. *Weeks v. Wedgewood Village, Inc.*, 1976 OK 72, ¶ 13, 554 P.2d 780, 785. Where the appealing party has failed to present any evidentiary material to support a finding that there was a dispute over the material facts, summary judgment is properly granted.

### III.

¶ 23 Based on the foregoing, we affirm the summary judgment in favor of defendant Phillips Petroleum Company on plaintiff Keith McNickle's claims of tortious interference with contractual relations and tortious interference with prospective economic advantage.

¶ 24 AFFIRMED.

¶ 25 BOUDREAU, V.C.J., and STUBBLEFIELD, P.J., concur.